IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **INTERNATIONAL TRADE S.A.** § <br> § <br> *Plaintiff* § <br> § <br> **v.** § <br> § <br> § **C.A. NO.** <br> **LA DARIEN NAVEGACION S.A., and** § **IN ADMIRALTY, Rule 9(h)** <br> **MARUGAME KISEN KAISHA LTD.,** § <br> *in personam,* **and the M/V OCEAN** § <br> **INNOVATION, her engines, tackle and** § <br> **apparel,** *in rem* § <br> § <br> *Defendants.* § | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

COMES NOW Plaintiff, International Trade S.A. ("IT"), by its attorneys Royston, Rayzor, Vickery & Williams, L.L.P., as and for its Verified Original Complaint against La Darien Navegacion S.A. ("LDN"), Marugame Kisen Kaisha Ltd. ("MKK") *in personam*, and the M/V OCEAN INNOVATION ("Vessel"), *in rem*, and alleges as follows:

### JURISDICTION & VENUE

1. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333, as hereinafter more fully appears, and is an admiralty or maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure, and under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

2. The court has *in personam* jurisdiction over LDN and MKK because they own, operate, and manage vessels in Texas navigational waters and otherwise do business in Texas.

3. The court has *in rem* jurisdiction over the Vessel because the Vessel is now or will be present within this District during this action.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b).

## PARTIES

5.      At all material times, Plaintiff International Trade S.A. was and is a foreign business entity organized and existing under the laws of Belgium, with its principal place of business located at 4, rue du Trône, 1000 Brussels, Belgium.

6.      At all material times, Defendant La Darian Navegacion S.A. was and is a foreign business entity organized and existing under the laws of Panama, with its principal place of business located at Urbanizacion Marbella MMG Tower, 53rd Street, 16th floor, Panama City, Panama.

7.      At all material times, Defendant Marugame Kisen Kaisha Ltd. was and is a foreign business entity organized and existing under the laws of Japan, with its principal place of business located at 2-45, Kora-cho 1-chome, Imabari-shi, Ehime-ken, 799-2111, Japan.

8.      At all material times, Defendant M/V OCEAN INNOVATION was and is a Panamanian-flagged ocean-going bulk carrier (IMO No. 9774329). LDN and MKK are both registered owners of the M/V OCEAN INNOVATION.

## FACTS

9.      Plaintiff IT is a metal processing company and global commodity trader.

10.      On or about October 21, 2019, IT agreed to purchase a cargo of steel scrap ("Cargo") from Ascor UK Limited.

11.      Steel scrap consists of a mix of mill scrap (stampings, cuttings, bars) industrial scrap (nuts, bolts, miscellaneous scrap), railroad scrap (wheels, axles, parts of locomotives) and wrought iron. To ensure quality, the scrap must be free of impurities such as non-metallic, non-

ferrous metals, excessive dirt, grease, and oil. The scrap is traded around the world, and eventually processed, refined, and recycled.

12. The purchase contract caps the level of allowable impurities in the Cargo at 1%. The purchase contract is attached as **Exhibit 1**.

13. On or about November 16, 2019, 25,200mt of Cargo was loaded onto the Vessel in St. Petersburg, Russia.

14. Two separate surveyors attending the loading and issued reports detailing impurity levels ranging from 0.75-0.95%—within the contractually acceptable range. The surveyor reports from the loading are attached as **Exhibit 2** and **Exhibit 3**.

15. The mate's receipt and clean bill of lading[1] both state the cargo was "clean on board" and in "apparent good order." The mate's receipt and bill of lading are attached as **Exhibit 4** and **Exhibit 5**, respectively.

16. The Vessel loaded no other cargo and proceeded directly to the discharge port of Tsingeli, Greece. The Vessel arrived on or about December 9, 2019 and commenced discharging.

17. During discharge, it became clear the impurity levels were much higher than 1%. The Cargo was not in "apparent good order" and did not comply with the descriptions in the bill of lading and mate's receipt.

18. Two separate surveyors attended the discharge and issued reports detailing impurity levels ranging from 9.29-10.50%—ten times the contractually acceptable range. The surveyor reports from the discharge are attached as **Exhibit 6** and **Exhibit 7**.

---

[1] A clean bill of lading contains no superimposed clause specifying any defect to the cargo or its packing, confirming that the cargo has been received by the ship in apparent good order and condition. PETER BRODIE, DICTIONARY OF SHIPPING TERMS 68 (6th ed. 2013).

19. One surveyor noted "excessive impurities were present in all holds, loaded in layers throughout almost the entire cargo." The other surveyor remarked "[p]art of this impurity is dust/dirt and bottom filling parts…[b]ut, the rest [*sic*] impurity which, majority of 9,29% of [*sic*] whole impurity was FLUE DUST."

20. As a result, about 10% or 2,500mt of the Cargo was flue dust, dirt, and other impurities, rather than the steel scrap that was purchased.

## **RULE C ALLEGATIONS**

21. When cargo has been stowed on board the vessel and bills of lading are issued, the bills of lading become binding contracts on the vessel *in rem* upon the sailing of the vessel with the cargo. The sailing of the vessel constitutes a ratification of the bills of lading and creates a maritime lien which is the basis of the *in rem* recovery. *Cactus Pipe & Supply Co. v. M/V MONTMARTRE*, 756 F.2d 1103, 1113 (5th Cir.1985)

22. The Vessel and defendants LDN and MKK breached, failed, and violated their duties and obligations as common carriers and were otherwise at fault. LDN and MKK managed, owned, or otherwise controlled the Vessel which now is, or will be, within the jurisdiction of this Court.

23. Plaintiff also alleges, in the alternative and without waiving the above cause of action, that all defendants were bailees of Plaintiff's cargo. Defendants delivered the cargo in a damaged and off-specification condition. Defendants breached their duties and obligations as bailees and were negligent.

24. Because of the Defendants' damage to the Cargo, Plaintiff has a right to arrest the Vessel to enforce its maritime lien.

25. Plaintiff requests that the Court permit service of the Vessel *in rem* while she is in port in Brownsville, Texas.

## ARBITRATION

26. This action is also in aid of arbitration. Plaintiff intends to commence arbitration under Section 1 of the bill of lading, which incorporates by reference the Law and Arbitration Clause contained within the Charter Party. The Law and Arbitration Clause likely provides for English law and calls for arbitration in London.

27. Plaintiff seeks to obtain security in aid of such arbitration under 9 U.SC. §§ 8, 201-08, by the arrest of the M/V OCEAN INNOVATION according to the usual course of admiralty proceedings, and seeks to obtain security for its entire claim, plus interest, costs, and attorney's fees by arresting the Vessel. *E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia*, 876 F.2d 1168, 1173 (5th Cir. 1989).

## DAMAGES

28. As a direct result of the Defendants' negligent acts, Plaintiff experienced at least **$1,553,103.15** in damages, including economic losses, damages, lost revenue, surveyor fees, and legal fees:

   a. The market value of the Cargo at the discharge port was $294.51/mt. Considering a .75% impurity allowance, about 2,457mt of Cargo was impacted, leading to economic losses of **$723,611**.

   b. The impurities caused **$169,676** of damages to the production process.

   c. The impurities also caused **$342,077.58** of lost revenue based on the reduced production output.

   d. Plaintiff was also forced to spend **$17,738.57** in surveyor fees.

   e. Finally, Plaintiff expects to spend no less than **$300,000** in legal fees.

### INDEMNITY IN FAVOR OF U.S. MARSHAL

29. Plaintiff IT agrees to hold harmless and indemnify the U.S. Marshal and all of his deputies from any and all liability as a result of arresting the M/V OCEAN INNOVATION.

### CONDITIONS PRECEDENT

30. All conditions precedent have been performed.

31. All and singular, the premises of this Verified Complaint are true and correct and within the admiralty and maritime jurisdiction of the United States and this Honorable Court.

### PRAYER

**WHEREFORE**, Plaintiff prays:

a. Plaintiff demands recovery from all defendants, jointly and severally; and

b. That Plaintiff have judgment hereon in the amount of **$1,553,103.15**, any liquidated damages potentially available, attorney's fees and costs; and

c. That process *in rem* under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims be issued against Defendant M/V OCEAN INNOVATION, her engines, boilers, tackle, etc., placing the Vessel under the arrest, custody, and control of the Marshal of this District;

d. That the Defendant M/V OCEAN INNOVATION, her engines, tackle, apparel, furniture, and equipment and all other appurtenances and additions, improvements, and replacements belonging to it, be condemned and sold to pay the demands and claims aforesaid with interest, attorney's fees and costs, and *custodia legis* costs due Plaintiff as alleged above;

e. After the arrest of the Defendant M/V OCEAN INNOVATION, her engines, tackle, apparel, furniture and all other appurtenance and additions, improvements, and

      replacements under the Warrant to Seize the Vessel and the sale of the Vessel under the direction of this Court and the deposit of the sale proceeds into the registry of the Court, Plaintiff requests that this action be stayed in favor of arbitration under the bill of lading and applicable Charter Party provision, with this Honorable Court retaining jurisdiction to enforce any subsequent award issued in the arbitration against such property or sale proceeds.

f.    Plaintiff agrees to release and hold harmless, and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from all liability or responsibility for claims arising from the arrest of the Vessel.

g.    That Plaintiff may have such other, further and different relief as the Court deems just and proper.

                              Respectfully submitted,

                              By: */s/ James H. Hunter, Jr.*
                                  James H. Hunter, Jr.
                                  Attorney-in-Charge
                                  State Bar No. 00784311
                                  Federal I.D. No. 15703
                                  jim.hunter@roystonlaw.com
                                  ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
                                  55 Cove Circle
                                  Brownsville, Texas 78521
                                  Telephone:    (956) 542-4377
                                  Facsimile:     (956) 542-4370

                                  **ATTORNEYS FOR PLAINTIFF**
                                  **INTERNATIONAL TRADE S.A.**